**ROBERT A. RABBAT**, OSB No. 061943
rrabbat@epgrlawyers.com
**NED M. GELHAAR,** CA SBN 163185
*Pro hac vice* (application forthcoming)
ngelhaar@epgrlawyers.com
ENENSTEIN PHAM GLASS & RABBAT LLP
11920 Southern Highlands Parkway, Suite 103
Las Vegas, NV 89141
Phone: (702) 468-0808

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| SYNERGY CAPTIVE STRATEGIES, LLC, a Nevada Limited Liability Company, <br><br> Plaintiff, <br><br> v. <br><br> RCM SETTLEMENTS INC., a Wyoming Corporation, <br><br> Defendant. | Case No. <br><br> COMPLAINT FOR DECLARATORY JUDGMENT |

Plaintiff Synergy Captive Strategies, LLC ("Synergy") files this complaint against RCM Settlements Inc. ("RCM"), and states:

## NATURE OF THE ACTION

1.  This is an action for declaratory judgement arising from a dispute between Synergy and RCM as to insurance coverage under a Personal Injury Settlement Contract Default insurance policy ("Policy") issued to RCM by its captive insurance company, Sunrise Indemnity, Inc. ("Sunrise"). RCM tendered a claim for insurance coverage to Synergy as Sunrise's captive insurance manager and Synergy informed RCM that the Policy did not provide coverage for the

claim. RCM contends that coverage exists and has threatened to file suit against Synergy. Synergy seeks a declaratory judgment confirming that RCM is not entitled to coverage under the Policy.

## PARTIES

2. Synergy is a limited liability company organized and existing under the laws of the State of Nevada with its principal place of business in Clark County, Nevada.

3. RCM is a corporation organized and existing under the laws of the State of Wyoming with its principal place of business in Sheridan County, Wyoming. RCM may be served through its registered agent for service of process, Registered Agents Inc., at 30 North Gould Street, Suite R, Sheridan, Wyoming 82801.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

5. RCM is subject to the personal jurisdiction of this Court because Paragraph VII. B. of the Policy states that "[a]ny suit or action brought to enforce this **Policy** or any rights granted pursuant to this **Policy** may be brought only in courts located within the state of Oregon. **Company** and **Insured** hereby agree that such courts will have venue and exclusive subject matter and personal jurisdiction. . . ." (Emphasis in original)

6. Venue is proper in this District pursuant to Paragraph VII. B. of the Policy, and pursuant to 28 U.S.C. § 1391(b)(3) because RCM is subject to personal jurisdiction in this District and there is no other district in the State of Oregon in which any defendant resides or where any of the events or omissions giving rise to the claim occurred.

## FACTS

**I.     THE PERSONAL INJURY SETTLEMENT CONTRACT DEFAULT POLICY**

    **7.**     The Policy was issued by Sunrise, a pure captive insurance company licensed by the State of Oregon, with an effective date of September 22, 2021 and an expiration date of September 21, 2022.  A true and correct copy of the Policy is attached as Exhibit "A" to this Complaint and incorporated here by reference.

    8.     Under the heading "DEFINITIONS", the Policy contains the following pertinent provisions:

    a. Paragraph I. B. states: "Broker shall mean a broker of a **Purchase Agreement** who is party to a contract or agreement with **Insured** pursuant to which a portion of the **Buyer's Interest** is payable to **Insured**.[1]

    b. Paragraph I. C. states: "Buyers Interest shall have the meaning set forth in the **Purchase Agreement**."

    c. Paragraph I. F. states: "Covered Event shall mean the failure of a **Broker** to deliver to **Insured** all or a part of the agreed-upon portion of the **Buyer's Interest** in connection with a **Purchase Agreement** due to:

    1.     The occurrence of an **Event of Default**; or

    2.     Fraud and/or conversion by the **Broker**, the **Broker's** attorney, or an escrow agent. A Covered Event shall be deemed to first occur at the time that **Insured** is aware that an **Event of Default** has occurred or at the time that **Insured** discovers the fraud and/or conversion."

---

[1] Policy terms shown in bold type in this Complaint are in bold type in the Policy.

      d. Paragraph I. G. states: "Covered Loss shall mean the amount of the **Buyer's Interest** that is due and unpaid to **Insured** under the **Purchase Agreement**. Covered Loss shall also include costs sustained by **Insured** in resolving the litigant's obligation to pay the **Buyer's Interest** to **Insured**, including but not limited to attorney's fees."

      e. Paragraph I. J. states: "Event of Default shall have the meaning set forth in a **Purchase Agreement**."

      f. Paragraph I. R. states: "Purchase Agreement shall mean an agreement between a **Broker** and a litigant, pursuant to which such litigant has transferred an interest in litigation proceeds to **Insured** in exchange for a purchase price."

9. Under the heading "INSURING AGREEMENT", Paragraph III. A. of the Policy contains the following pertinent provisions:

> Subject to the limits, conditions and exclusions contained in this **Policy**, and to any **Deductible**, **Company** will reimburse **Insured** the amount of **Covered Loss** arising from any **Covered Event** . . . .

## II. RCM'S CLAIM FOR COVERAGE

10. RCM submitted a Preliminary Claim Report to Synergy dated April 20, 2022 ("Claim") along with several Attachments, including Attachment "A" titled "Detailed Description of Incident" ("Detailed Description"). A true and correct copy of RCM's Claim and attachments thereto are attached as Exhibit "B" to this Complaint and incorporated here by reference. As pertinent here, RCM's Detailed Description states as follows:

> In 2021, RCM Settlements, LLC [sic] ("RCM") started making loans to Beasley Law Firm, Matthew Beasley, J & J Consulting, J & J Purchasing, and Jeffery Judd

("the Beasley Group") as part of a personal injury settlement advancement investment program ("the Beasley Program"). RCM has been adding funds to the Beasley Program for 6 months.

The Beasley Program was an investment program that used investments from RCM to make advances to personal injury clients on settlements of their cases. Settlement advances to clients were made in $100,000.00 increments. A number of times, RCM invested in multiple settlements with a single payment.

. . .

As mentioned above, on March 10, 2022, RCM was notified that Matthew Beasley, the individual, had been arrested and confessed to orchestrating a Ponzi scheme in the amount of at least $300,000,000.00, which included the money RCM invested in the Beasley Program. See attached news articles. Since before that date, no interest payments had been received, and requests made to Jeffery Judd, the individual, about unpaid payments went unanswered.

Existing news articles (Attachments B1-B4) establish that Matthew Beasley, the individual, knowingly and falsely, made misrepresentations of a material fact to RCM and other investors, i.e., that Matthew Beasley, the individual, represented that advanced payments were made to individuals secured by their personal injury settlements. In fact, NO SUCH PAYMENTS WERE EVER MADE NOR DID ANY CLIENTS EXIST! The Beasley Program was simply using new investment funds to pay old investors. RCM relied to their detriment upon Beasley's misrepresentations. In the newspaper articles, Matthew Beasley, the individual, NUMEROUS TIMES CONFESSED that he had orchestrated the Ponzi scheme. Hundreds of people apparently have lost hundreds of millions of dollars.

### III. SYNERGY'S RESPONSE TO RCM'S CLAIM

11. In a letter dated April 27, 2023, Synergy through counsel informed RCM that the Policy did not provide coverage for the Claim ("Response Letter"). A true and correct copy of the Response Letter is attached as Exhibit "C" to this Complaint and incorporated here by reference.

12. As alleged above and as explained in the Response Letter, the Policy's Insuring Agreement provides in Paragraph III. A. that "**Company** will reimburse **Insured** the amount of **Covered Loss** arising from any **Covered Event** . . . ." As pertinent here, "**Covered Loss**" is defined in Paragraph I. F. of the Policy to mean "the amount of the **Buyer's Interest** that is due

and unpaid to **Insured** under the **Purchase Agreement**." "Purchase Agreement" is defined in Paragraph I. R. of the Policy to mean "an agreement between a **Broker** and *a litigant*, pursuant to which *such litigant has transferred* an interest in *litigation proceeds* to **Insured** in exchange for a purchase price."  (Italics added)

13.     As RCM put it in its Detailed Description, since the Beasley Program was a Ponzi scheme, "NO . . . PAYMENTS WERE EVER MADE NOR DID ANY CLIENTS EXIST!"  As a result, there were not -- and never could have been -- any "Purchase Agreements" as the term is defined in the Policy because there were never any actual litigants or litigations.  The use of the past tense "has transferred" in the Policy's definition of "Purchase Agreement" confirms that an agreement pursuant to which an actual past transfer of an interest in litigation proceeds was required in order to meet the definition.  Absent any real litigation or clients, there could be no "transfer of an interest in litigation proceeds" and therefore no "Purchase Agreement" under the terms of the Policy.

14.     Further, since the term "Covered Loss" in the Insuring Agreement is defined in Paragraph I. G. of the Policy to mean "the amount of the **Buyer's Interest** that is due and unpaid to **Insured** under the **Purchase Agreement** . . . *,"* there can be no Covered Loss because there is no Purchase Agreement as the term is defined in the Policy and therefore no amount due and unpaid under it.

15.     Moreover, the term "Buyer's Interest" is defined in Paragraph I. C. of the Policy to "have the meaning set forth in the **Purchase Agreement**."  As there were never any Purchase Agreements as the term is defined in the Policy, there could be no "Buyer's Interest" in them and therefore no "Covered Loss" as the term is defined in the Policy.

16.     The absence of a "Purchase Agreement" as the term is defined in the Policy also establishes that there was no "Covered Event" as is required for coverage under the Insuring Agreement.  As pertinent here, "Covered Event" is defined to mean "the failure of a **Broker** to deliver to **Insured** all or a part of the agreed-upon portion of the **Buyer's Interest** in connection with a **Purchase Agreement** . . . ."  Again, because there were no Purchase Agreements as the term is defined in the Policy and therefore no "Buyer's Interest" in them, there could be no failure to deliver an agreed upon portion of the Buyer's Interest and therefore no "Covered Event" as the term is defined in the Policy.

17.     As summarized in the Response Letter, the admitted nonexistence of any actual litigants, litigations, loans, or transfers of ownership establishes that there was never any "Purchase Agreement," "Covered Loss," or "Covered Event" as the terms are defined in the Policy and therefore no possibility of coverage under the Insuring Agreement.[2]

## IV.    RCM'S DEMAND LETTER

18.     In a letter dated March 27, 2024, RCM through counsel disputed Synergy's positions in the Response Letter and threatened to pursue litigation ("Demand Letter").  A true and correct copy of the Demand Letter is attached as Exhibit "D" to this Complaint and incorporated here by reference.

19.     In the Demand Letter, RCM's counsel contended that RCM was entitled to coverage under the Policy because RCM's principals "unequivocally *believed* that the Purchase Agreements they received were legitimate."  (Emphasis in original)  However, RCM's principals' subjective beliefs are irrelevant to the coverage determination and any document

---

[2] The Response Letter also raises numerous exclusions and limitations to coverage contained in the Policy that could apply if coverage existed under the Insuring Agreement.  Synergy does not address exclusions and limitations in this Complaint as there is no existing controversy concerning them, but reserves the right to assert these provisions should an actual controversy arise.

RCM received could not constitute a "Purchase Agreement" as the term is defined in the Policy for the reasons discussed above.[3]

20.     The Demand Letter goes on to state: "Just as importantly, Synergy's underwriters and representatives believed the Purchase Agreements to be legitimate because had they believed or suspected otherwise, they presumably would not have permitted insurance coverage to issue or to continue." But under the plain and unambiguous terms of the Policy – titled "Personal Injury Settlement Contract Default Policy" – coverage *did* exist for *defaults* of personal injury settlement contracts so long as the provisions of the Policy were satisfied. Thus, even if Synergy's representatives' subjective beliefs were relevant to the existence of coverage, any subjective belief that actual personal injury settlement contracts existed would be entirely consistent with issuance of the Policy which insured against defaults by parties to such contracts.

21.     The Demand Letter further states that "the mere fact of Beasley's Ponzi scheme having resulted in a lack of substance underlying the Purchase Agreements does not, in and of itself, invalidate or render the Purchase Agreements unenforceable as to [RCM]." However, in order to satisfy the definition of "Purchase Agreement," there had to be "an agreement between a **Broker** *and a litigant.*" Thus, the admitted "lack of substance underlying the Purchase Agreements" – specifically the absence of any litigant or litigation – defeats RCM's claim for coverage.

---

[3] RCM's counsel repeatedly uses the capitalized term "Settlement Agreement" in RCM's Demand Letter to describe fraudulent personal injury settlement contracts RCM received in connection with the Beasley Program. This is misleading. The term "Settlement Agreement" as material to the Policy was clearly defined in Paragraph I. R. of the Definitions Section of the Policy and the fraudulent documents titled "Settlement Agreement" RCM received do not meet that definition. Further, documents concerning the Beasley Program used multiple terms to identify the personal injury settlement contracts that ostensibly would be entered into with litigants. For example, the Beasley Program's Private Placement Memorandum RCM submitted with its Claim identifies the contracts with litigants as "Purchase Contracts" (*see, e.g.*, pp. 6, 7, and the cover page to PPM Exhibit C) and "Insurance Settlement Agreements" (*see, e.g.*, pp. 1, 6) as well as "Settlement Agreements."

22. Finally, the Demand Letter contends that "[t]he fact that Synergy now, in hindsight, appears to be asserting that there was simply never any insurable interest is wildly inconsistent with Synergy's issuance of the policies in the first place, substantial premiums that [RCM] paid out of pocket for the policies, and Synergy's failure to raise even a single, solitary question or objection about anything at any point in time prior to the collapse of the Ponzi scheme." But as shown above, the *risk* (not insurable interest) insured by the Personal Injury Settlement Contract Default Policy was a *default* by a party to a personal injury settlement contract, not the risk that no such contracts ever existed in the first place. The risk and exposure of a default by the parties to particular personal injury settlement contracts are far different from the risk and exposure associated with the entire Beasly Program being a fraud. As with any captive insurance policy, RCM had the ability to negotiate the terms of the Policy. Had it wanted the Policy to cover the nonexistence of the underlying personal injury settlement contracts, it could have negotiated to include that as a covered risk under the Policy.

## CLAIM FOR RELIEF

**(Declaratory Judgment)**

23. Synergy realleges and incorporates by reference the allegations in each paragraph above, as if set forth fully herein.

24. This is an action for declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, the Federal Declaratory Judgment Act.

25. An actual and justiciable controversy has arisen between Synergy and RCM as to RCM's right to coverage under the Policy.

26. RCM alleges and contends that it is entitled to insurance coverage under the Policy for the loss alleged.

27. Synergy contends that there is no coverage for RCM's loss under the Policy.

28. Synergy seeks a declaratory judgment declaring that RCM is not entitled to coverage under the Policy.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for the following relief:

(a) For a judgment declaring that RCM is not entitled to coverage under the Policy;

(b) For costs including attorney's fees incurred pursuant to applicable law;

(c) For such other relief as the Court may deem just, equitable, and proper.

DATED: April 29, 2024

**ENENSTEIN PHAM GLASS & RABBAT, LLP**

By: _____
Robert A. Rabbat, OSB No. 061943
Ned M. Gelhaar, CA SBN 163185
*Pro hac vice* (application forthcoming)
11920 Southern Highlands Parkway
Suite 103
Las Vegas, NV 89141
Tel: (702) 468-0808
rrabbat@epgrlawyers.com
ngelhaar@epgrlawyers.com

Attorneys for Plaintiff